**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **EP-14-CV-00129-FM** |
| | § | |
| **APPROXIMATELY $18,000.00 IN** | § | |
| **UNITED STATES CURRENCY SEIZED** | § | |
| **ON OR ABOUT OCTOBER 29, 2013 AT** | § | |
| **THE U.S. BORDER PATROL** | § | |
| **CHECKPOINT IN SIERRA BLANCA,** | § | |
| **TEXAS,** | § | |
| | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR DEFAULT AND FINAL
JUDGMENT**

On this day, the court considered the United States of America's ("Government") "United States
of America's Motion for Default Judgment and Final Order of Forfeiture" ("Motion for Default and Final
Judgment") [ECF No. 19], filed February 27, 2015.

The Government requests the court to enter default and final judgment of forfeiture against any
and all right, title, and interest of Nathan T. Otto ("Otto") and Michael Camacho ("Camacho") in
approximately $18,000.00 in United States currency seized on or about October 29, 2013 at the U.S.
Border Patrol checkpoint in Sierra Blanca, Texas ("Respondent Property"), and against any and all right,
title, and interest of all other potential claimants who were served by publication.  For the reasons set
forth below, the court will grant the Government's Motion for Default and Final Judgment.

I.      **BACKGROUND**

On April 10, 2014, the Government filed its "Verified Complaint for Forfeiture" ("Verified

Complaint")[1] and its "Notice of Complaint for Forfeiture"[2] ("Notice").  On April 14, 2014, the court entered its "Order for Warrant of Arrest of Property" ("Order").[3]  On the same day, a "Warrant for the Arrest of Property" ("Warrant for Arrest")[4] was issued as to the Respondent Property.

The Notice advised that any persons who receive direct notice of the forfeiture action must file a verified claim with the Clerk of the Court within 35 days after the notice was sent and answer within 21 days thereafter.[5]

On May 19, 2014, the Government filed its "Declaration of Publication,"[6] indicating the Government posted its Notice for 30 days consecutively, beginning on April 18, 2014, on an official online Government forfeiture site.[7]  Accordingly, anyone asserting an interest in the Respondent Property was provided with 60 days in which to file a verified claim, and another 21 days in which to file an answer with the court.[8]  Thus, the deadline to file a claim for individuals who received notice by publication was June 17, 2014.[9]

On March 3, 2015, pursuant to the Government's request, the Clerk of the Court entered its "Entry of Default By Clerk of Court" ("Entry of Default").[10]

---

[1] ECF No. 1.

[2] Verified Compl., ECF No. 1 at 8–9.

[3] ECF No. 3.

[4] ECF No. 4.

[5] Notice 2.

[6] ECF No. 8.

[7] Decl. Publication, "Advertisement Certification Report."

[8] Mot. Default Final J. 5.

[9] *Id.*

[10] ECF No. 20.  Although the document is dated February 27, 2015, it was not entered until March 3rd.

II.     **APPLICABLE LAW**

     *A.*    *Default Judgment Pursuant to Federal Rule of Civil Procedure 55 ("Rule 55")*

Rule 55 provides:

> (a) Entering a Default.  When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.[11]
> Rule 55 further provides "the party must apply to the court for a default judgment."[12]  Pursuant to

Rule 55(a), an entry of default is a condition precedent to a default judgment.

     *B.*    *Civil Forfeiture Actions*

     The above-captioned cause is a civil forfeiture action *in rem* brought against the Respondent Property pursuant to 21 U.S.C. § 881(a)(6) ("section 881(a)(6)").  The Government alleges that the Respondent Property constitutes moneys furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Subchapter I of Title 21 of the United States Code ("Subchapter I"), as well as moneys used or intended to be used to facilitate any violation of Subchapter I.[13]  In accordance, the Government avers that the Respondent Property is subject to forfeiture pursuant to section 881(a)(6).[14]

     Section 881(a)(6) provides that the following property is subject to forfeiture to the United States:

> All moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of [Subchapter I], all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of [Subchapter I].[15]

---

[11] Fed. R. Civ. 55(a).

[12] Fed. R. Civ. 55(b)(2).

[13] Verified Compl. 2 ¶ 3.

[14] *Id.* ¶ 2.

[15] 21 U.S.C. § 881(a)(6).

After the Respondent Property was seized from a vehicle driven by Otto and in which Camacho was the only other passenger, the Drug Enforcement Administration commenced administrative forfeiture proceedings against the Respondent Property.[16]  During these proceedings, the Government represents that Otto filed a claim asserting that he is the owner of the Respondent Property.[17]  As a result of the claim, the Government commenced this civil forfeiture action pursuant to 18 U.S.C. § 983 ("section 983").[18]

Section 983 permits the Government to file a complaint for forfeiture of property in a United States district court.[19]  If the Government does so, pursuant to the Supplemental Admiralty and Maritime Claims Rule G of the Federal Rules of Civil Procedure ("Rule G"), the Government must publish "notice of the action within a reasonable time after filing the complaint or at a time the court orders."[20]  Publication may be done by "posting a notice on an official internet [G]overnment forfeiture site for at least 30 consecutive days."[21]  Furthermore, "[t]he [G]overnment must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the [G]overnment."[22]

Any person claiming property that has been seized in a civil forfeiture action after a verified complaint for forfeiture has been filed may file a claim asserting an interest in the seized property.[23]

---

[16] Mot. Default Final J. 2.

[17] *Id*.

[18] *Id*.

[19] 18 U.S.C. § 983(a)(4)(A).

[20] Fed. R. Civ. P. Supp. R. G(4)(a)(i).

[21] Fed. R. Civ. P. Supp. R. G(4)(a)(iv)(C).

[22] Fed. R. Civ. P. Supp. R. G(4)(b)(i).

[23] 18 U.S.C. § 983(a)(4)(A).

4

Where notice has been given by publication on an official online Government forfeiture site, any potential claimant has 60 days to file a claim.[24]  Where notice has been provided by service of the complaint for forfeiture on a potential claimant, the potential claimant must file a claim asserting an interest in the seized property within 35 days after direct notice is sent.[25]  Upon filing a claim, any claimant must file an answer to the complaint within 21 days after the date of filing the claim.[26]  The Government carries the burden of proving by a preponderance of the evidence that the property is subject to forfeiture.[27]  A judgment of forfeiture may not be entered unless the Government has appropriately provided notice.[28]

## III.  DISCUSSION

The Government has fulfilled all conditions precedent in order to seek a default and final judgment in its favor and against any and all right, title, and interest to and in the Respondent Property of Otto, Camacho, and all other potential claimants.  The Government's Verified Complaint appears to have been timely filed.  The Government perfected service on Otto's counsel, Louis Elias Lopez, in accordance with Rule G.[29]  Likewise, the Government posted public notice of forfeiture for 30 days consecutively on the Government's forfeiture website.

More difficult issues are raised by the Government's efforts to serve Camacho.  When Camacho

---

[24] Fed. R. Civ. P. Supp. R. G(5)(a)(ii)(B).

[25] Fed. R. Civ. P. Supp. R. G(4)(b)(ii)(B) (stating that a "deadline for filing a claim [is] at least 35 days after the [direct] notice is sent").

[26] Fed. R. Civ. P. Supp. R. G(4)(b)(ii)(C) (stating "an answer . . . must be filed no later than 21 days after filing the claim").

[27] 18 U.S.C. § 983(c)(1).

[28] Fed. R. Civ. P. Supp. R. G(4)(a)(i).

[29] "Process Receipt and Return," ECF No. 10, filed June 10, 2014; "Declaration in Support of Motion for Final Order of Forfeiture" ("Arreola Declaration"), at 3–4 ¶¶ 4–5, ECF No. 19-1, filed Feb. 27, 2015; *see also* Fed. R. Civ. P. Supp. R. G(4)(b)(iii)(B) ("Notice may be sent to the potential claimant or to the attorney representing the potential claimant . . . .").

and Otto were arrested for the offense underlying this forfeiture, Camacho provided two commercial driver's licenses.[30]  One license, issued by Texas on July 19, 2011, listed his address as 1021 Stacias Way in Pflugerville, Texas.[31]  The other license, issued by California on December 12, 2011, listed his address as 1458 North Elderberry Avenue in Ontario, California.[32]  Under Rule G, "[n]otice to a person arrested in connection with an offense giving rise to the forfeiture who is not incarcerated when notice is sent may be sent to the address that person last gave to the agency that arrested or released the person."[33]  Acting on the address provided by Camacho's later-issued license, the Government attempted to serve Camacho at the Ontario, California address.[34]  But at that address, Maria Ramirez informed the Government Camacho had never lived there and, furthermore, Camacho was in custody in Texas and Ms. Ramirez believed he was with his mother in Austin, Texas.[35]  The Government also used LexisNexis to search public records for Camacho's addresses, and the search reflected that Camacho's most recent address was the Ontario, California address found on his California driver's license.[36]  The Government concedes it did not attempt to serve Camacho at any location besides the Ontario, California address.[37]

Although attempting to serve Camacho at the Pflugerville address listed on his Texas driver's license might have provided actual notice, "the [G]overnment need not exert heroic efforts or ensure

---

[30] Arreola Decl. 2–3 ¶ 4.

[31] *Id.*, Ex. B.

[32] *Id.*, Ex. A.

[33] Fed. R. Civ. P. Supp. R. G(4)(b)(iii)(D).

[34] Arreola Decl. 2–3 ¶ 4.

[35] "Process Receipt and Return," ECF No. 10, filed June 10, 2014.

[36] Arreola Decl. 3 ¶ 4. A recent criminal history report also indicated Camacho had not been arrested or prosecuted subsequent to the October 29, 2013 incident. *Id.*

[37] *See* Mot. Default Final J. 4–5 ("The Government respectfully submits that it was not required to attempt to serve Camacho at all possible addresses, but instead reasonably relied upon the address in the most recently issued driver's license, as well as upon publication of the notice of forfeiture on an official government website.").

actual notice" in its attempts to serve interested parties.[38]  All that is required for known potential claimants is that notice be sent "by means reasonably calculated to reach the potential claimant."[39]  The Ontario, California address was Camacho's most recent address, as indicated by LexisNexis and Camacho's California driver's license.  Furthermore, Ms. Ramirez's responses at that address indicated she knew Camacho.  Accordingly, attempting to serve Camacho in Ontario, California was reasonably calculated to provide Camacho with notice of forfeiture proceedings in compliance with Rule G.  As there is no indication the Government subsequently learned of an address where Camacho was definitely available,[40] the Government has fulfilled its mandate to adequately provide Camacho with notice.

Otto filed a claim and answer regarding forfeiture of the Respondent Property.[41]  However, Otto subsequently withdrew his claim and answer.[42]  No other parties have appeared to contest the action to date, and the statutory time periods for doing so, as set forth in Rule G(5)(a)(ii) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, have expired.

The Government has shown there was probable cause for the arrest of the Respondent Property for an alleged violation of Subchapter I, and hence, the Respondent Property is subject to forfeiture pursuant to section 881(a)(6).  Although the Verified Complaint does not specify which section of Subchapter I has been violated, it implicates 21 U.S.C. § 841, which provides that: "[e]xcept as

---

[38] *United States v. Alvarez*, 710 F.3d 565, 567 (internal quotation marks omitted) (citing *Dusenbery v. United States*, 534 U.S. 161, 170–71 (2002)).

[39] Fed. R. Civ. P. Supp. R. G(4)(b)(i), (iii)(A).

[40] *See Barrera–Montenegro v. United States*, 74 F.3d 657, 660 (5th Cir. 1996) (compiling cases where the government knew the location of a party or party's registered agent and failed to subsequently attempt service, and holding that "when the [G]overnment has in its possession information which would enable it to effect actual notice on an interested party, it is unacceptable . . . to ignore that information").

[41] "Verified Claim," ECF No. 7, filed May 14, 2014; "Answer to Complaint for Forfeiture in Rem," ECF No. 9, filed May 19, 2014.

[42] "Claimant Nathan Otto's Unopposed Motion to Withdraw Claim and Answer," ECF No. 15, filed Aug. 21, 2014; "Order," ECF No. 16, entered Aug. 22, 2014.

authorized by [Subchapter I], it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."[43]

The Verified Complaint alleges that on or about October 29, 2013, a white Ford Explorer (the "Vehicle") entered the United States Border Patrol ("USBP") checkpoint near Sierra Blanca, Texas.[44]  It further alleges that Otto was driving the Vehicle and Camacho was the only other passenger.[45]  The Verified Complaint also alleges that while conducting a secondary inspection, a USBP canine alerted a USBP agent to the presence of concealed humans and/or illegal narcotics in the seams of the Vehicle's rear driver side passenger door.[46]  After the Vehicle's door was opened, thereby allowing the canine to enter the Vehicle, the canine alerted to a black backpack inside the Vehicle.[47]

After the agent opened the backpack, the canine alerted to a black lockbox within the backpack.[48]  When the agent asked Otto and Camacho to whom the lockbox belonged, Otto responded that he owned the lockbox and provided the lockbox's key to the agent.[49]  The lockbox contained the Respondent Property, divided into four bundles wrapped in rubber bands.[50]  Subsequent searches of the vehicle located two clear plastic wrappers containing a substance which field-tested positive for methamphetamine, as well as a firearm and more than 100 rounds of .22 caliber and 9mm Luger

---

[43] 21 U.S.C. § 841(a)(1).

[44] Verified Compl. 3 ¶ 6.

[45] *Id.*

[46] *Id.* ¶ 9.

[47] *Id.*

[48] *Id.* at 3–4 ¶ 9.

[49] *Id.* at 4 ¶ 9.

[50] Verified Compl. 4 ¶ 10.

ammunition.[51]

The Government's Verified Complaint adequately sets forth "a sufficient basis" for forfeiture of the Respondent Property to the Government.[52]  The Government appropriately provided the required notice.[53]  Therefore, the Government is entitled to entry of a default and final judgment in its favor and against any and all right, title, and interest to and in the Respondent Property of Nathan T. Otto, Michael Camacho, and all potential claimants who received notice by publication.

## IV.   CONCLUSION AND ORDERS

As the Clerk of the Court has entered its Entry of Default and the Government has shown it is entitled to a default and final judgment in its favor, the court enters the following orders:

1. "United States Of America's Motion for Default Judgment and Final Order of Forfeiture" [ECF No. 19] is **GRANTED**;

2. Petitioner United States of America **SHALL** have judgment by default against the Respondent Property;

3. Any and all right, title, and interest to and in the Respondent Property, approximately $18,000.00 in United States currency seized on or about October 29, 2013 at the U.S. Border Patrol checkpoint in Sierra Blanca, Texas, of Nathan T. Otto is hereby held in **DEFAULT** and **FORFEITED** to the United States of America;

4. Any and all right, title, and interest to and in the Respondent Property, approximately $18,000.00 in United States currency seized on or about October 29, 2013 at the U.S.

---

[51] *Id.* ¶¶ 11, 13.

[52] *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (observing that default judgment may only be entered if there is "a sufficient basis in the pleadings for the judgment entered").

[53] *See*  Fed. R. Civ. P. Supp. R. G(4)(a)(i) ("A judgment of forfeiture may be entered only if the [G]overnment has published notice of the action within a reasonable time after filing the complaint or at a time the court orders.").

Border Patrol checkpoint in Sierra Blanca, Texas, of Michael Camacho is hereby held in **DEFAULT** and **FORFEITED** to the United States of America;

5.      Any and all right, title, and interest to and in the Respondent Property, approximately $18,000.00 in United States currency seized on or about October 29, 2013 at the U.S. Border Patrol checkpoint in Sierra Blanca, Texas, of any other potential claimants who were served notice by publication are hereby held in **DEFAULT** and **FORFEITED** to the United States of America;

6.      The Drug Enforcement Administration, and/or its lawfully appointed agents or agencies, **SHALL** be reimbursed for any and all costs and expenses incurred relating to the seizure, custody, and maintenance of the Respondent Property, approximately $18,000.00 in United States currency seized on or about October 29, 2013 at the U.S. Border Patrol checkpoint in Sierra Blanca, Texas; and

7.      The Drug Enforcement Administration, and/or its lawfully appointed agents or agencies, **SHALL** dispose of the Respondent Property, approximately $18,000.00 in United States currency seized on or about October 29, 2013 at the U.S. Border Patrol checkpoint in Sierra Blanca, Texas, in accordance with the law.

**SO ORDERED.**

**SIGNED** this **5th** day of **March, 2015**.

_____
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**

10